621 A.2d 1069

Anthony PIERGALSKI, Administrator of the Estate
of David Piergalski, Deceased; and Morton B.
Debroff, Esquire, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (VIVIANO
MACARONI COMPANY), Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 20, 1992.

Decided Feb. 5, 1993.

Reargument Denied April 15, 1993.

Morton B. Debroff, for petitioners.

Pamela L. Briston, for respondent.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

COLINS, Judge.

Anthony Piergalski, as administrator of the estate of David Piergalski, and Morton B. Debroff, Esquire, petition for review of the October 1, 1991 decision and order of the Workmen's Compensation Appeal Board (Board).

On appeal, the only remaining question is whether Morton B. Debroff, Esquire (Debroff), as attorney for David Piergalski (claimant), is entitled to attorney's fees in the amount of 20% of the medical expenses that claimant recovered in his workmen's compensation claim through Debroff's representation.

This case comes before the Court after numerous proceedings below. Claimant, now deceased, suffered a back and neck injury while working for employer in August of 1980.

Claimant received compensation benefits for a brief period of time and then returned to work, but his disability persisted. Between August, 1980, and May, 1982, claimant's injury followed a pattern where the painful symptoms would dissipate enough to allow him to return to work, but after a brief stint of work that involved lifting objects and constant bending and stooping, the injury would be aggravated enough to force claimant out of work. In May of 1982, the injury worsened to the point where claimant was readmitted to the hospital for observation. Shortly thereafter, claimant filed a petition for the reinstatement of workmen's compensation benefits, which employer opposed.

After numerous delays, the referee held several hearings culminating in a final hearing on May 7, 1986. On July 7, 1986, the referee decided the substantive issues and awarded claimant approximately $90,000 in back compensation and medical expenses. The referee also limited Debroff's attorney's fees to 20% of claimant's past weekly benefit payments and found Debroff was not additionally entitled to 20% of the medical expenses claimant recovered. The referee based this determination on his recollection that a fee agreement between claimant and Debroff had not been submitted for the record. The referee relied on the following discussion [1] at the May 7, 1986 hearing, between the referee and Debroff's associate, Kevin R. Lomupo, Esquire: [2]

Referee Laughlin: What is your fee?

Mr. Lomupo: 20 percent

Referee Laughlin: Of what?

Mr. Lomupo: 20 percent of all benefits.

Referee Laughlin: You mean as long as he lives or the past benefits?

Mr. Lomupo: The past benefits.

Based on this discussion, the referee's understanding was that Debroff was asking for 20% of the past weekly compensa-

1. See the transcript of the May 7, 1986 hearing before referee, Lawrence J. Laughlin, at page 17.

2. Mr. Lomupo represented claimant at the May 7, 1986 hearing before the referee.

tion benefits awarded to claimant and, thus, the referee awarded 20% of the past benefits as attorney's fees.

Debroff appealed to the Board, arguing that the referee erred when he refused to award Debroff 20% of the reimbursed medical bills as attorney's fees. Debroff argued that he was entitled to 20% of the medical bills and any future compensation benefit payments by virtue of a contingency fee agreement between Debroff and claimant signed on July 1, 1982. Debroff alleged that this agreement provided that claimant agreed to pay Debroff 20% of any sum claimant hereafter received from his workmen's compensation claim. Debroff had not submitted the actual written fee agreement during the hearings before the referee but had introduced evidence as to the existence of the agreement as part of Exhibit 5 in the record of the hearings before the referee.[3] Debroff submitted the actual agreement as part of his July 8, 1986 appeal to the Board.

The Board's initial decision seemed to acknowledge the existence of the fee agreement between Debroff and claimant. The Board remanded the case to the referee "for further hearings on the reasonableness of Claimant's 20% fee agreement with Claimant's attorney." [4]

On remand, Debroff tried to offer the actual fee agreement into evidence, but the referee rejected the introduction of the agreement as untimely. The referee ultimately found as follows in Finding of Fact No. 4: "That the previous record in this case is completely devoid, on the basis of testimony or evidence, of the existence of any fee agreement contingent or otherwise that existed between claimant and his counsel."

---

3. See claimant's Exhibit 5, from the hearings before the referee; specifically, the Affidavit of Counsel submitted by Kevin Lomupo, Esquire, signed May 6, 1986, at page 2, paragraph 6, which reads:
   Claimant first consulted counsel on May 15, 1982, and retained him to pursue his claims for compensation against the Defendant, Viviano Macaroni, and its insurer, The Travelers Insurance Company. The Claimant has agreed to pay his said Attorney Twenty (20%) Percent of these claims.

4. See the May 29, 1987 decision of the Board, at page 2.

The referee did allow Debroff to testify on the record as to the amount of work and effort Debroff expended on behalf of claimant. Debroff testified that he spent over 200 hours working on the case during a five year period, which time spent included legal representation at hearings and depositions, as well as communication with medical providers to ensure that claimant would continue to receive medical treatment although the medical providers had not yet been paid. However, the referee's findings of fact were devoid of any specific findings with regard to the work and effort Debroff expended on behalf of claimant.

The referee approved attorney's fees for future benefits, but rejected Debroff's claim for 20% of the medical expenses as attorney's fees. The referee instead directed Debroff to "go to these medical outfits that this $70,000 is owed to and get me an affidavit that they are willing to pay you 20% for recovery of their $70,000, and I will be glad to give it to you."[5]

Debroff did not obtain any affidavits but instead appealed to the Board again, arguing that evidence of the fee agreement was received in the first hearing by the referee and its terms should, therefore, control. Debroff contended that the terms of the fee agreement entitled him to attorney's fees in the amount of 20% of claimant's medical bills, because payment was recovered through his representation of claimant.

The Board affirmed the decision of the referee, but in doing so, inexplicably contradicted the language of its own previous remand order. In its initial decision, the Board had remanded this matter to the referee "for further hearings on the reasonableness of *Claimant's 20% fee agreement* with Claimant's attorney." (Emphasis added.) In its final decision, however, the Board disavowed the existence in the record of evidence of the fee agreement. The Board found that the referee's Finding of Fact No. 4 was supported by substantial evidence and stated in its final decision, "In this case there was no fee agreement presented on the record. The Referee awarded the attorney fees requested on the record."

5. See the transcript of the August 10, 1987 hearing before the referee at page 15.

After the Board affirmed the referee's decision to limit attorney's fees to past and future benefits, Debroff filed a request for supersedeas, hoping to stop the insurer from paying the medical bills until the attorney's fee question was resolved. Supersedeas was denied, and the insurer, The Travelers Insurance Company, paid the medical providers in full. Debroff then appealed to this Court for review of the Board's decision and order.

Our scope of review is limited to whether there has been a violation of constitutional rights, an error of law, or whether necessary findings of fact are supported by substantial competent evidence. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986). We must decide two issues on appeal.

## I. WAS THERE EVIDENCE OF A FEE AGREEMENT IN THE RECORD?

Debroff argues that the referee's Finding of Fact No. 4 was not supported by substantial evidence. Debroff further contends that the referee made an error of law when he refused to approve the fee agreement between claimant and Debroff providing that claimant pay Debroff 20% of all sums obtained through the workmen's compensation claim. We agree.

The referee has consistently taken the position in this case that the record contains no evidence of a fee agreement between claimant and Debroff. He bases his position on the fact that the actual written fee agreement was never introduced into evidence. The Board concurred with the referee's position only *after* remanding the matter to the referee "for further hearings on the reasonableness of Claimant's 20% fee agreement with Claimant's attorney." We disagree with the Board's conclusion that, because the actual written agreement was not in the record, there is no evidence of a fee agreement.

Neither The Pennsylvania Workmen's Compensation Act (Act),[6] nor applicable case law requires that the actual written fee agreement be part of the record in order for the

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

fee agreement to be approved by a referee. While submission of the actual written agreement may be the most definitive way of placing a fee agreement into evidence, fee agreements are often introduced in an alternative manner. Sometimes a claimant will simply testify that he or she has signed a contingent fee agreement with an attorney.

In the instant case, the fee agreement between Debroff and claimant was introduced into evidence through an affidavit signed by Debroff's legal associate, Kevin Lomupo, Esquire, and submitted during the initial hearings before the referee. See footnote 4 of this opinion. The legitimacy of this affidavit has never been disputed by the referee, the Board, claimant, or Anthony Piergalski, the administrator of claimant's estate. Though the affidavit may be an unorthodox way of introducing the fee agreement into evidence, the affidavit is sufficient evidence to establish the existence of a 20% percent contingent fee agreement.

We, therefore, reverse the Board's conclusion that the referee's Finding of Fact No. 4 was supported by substantial evidence. We will resolve the other disputed issues in light of the existence of the 20% contingent fee agreement between claimant and Debroff.

## II. IS DEBROFF ENTITLED TO 20% OF THE MEDICAL EXPENSES AS ATTORNEY'S FEES?

Debroff contends that he is entitled to 20% of claimant's reimbursed medical expenses by virtue of the 20% contingent fee agreement. The referee awarded Debroff 20% of claimant's past and future compensation benefits as attorney's fees but refused to award Debroff 20% of the medical expenses claimant recovered. Debroff argues that the referee erred as a matter of law when he refused to award 20% of the medical expenses as attorney's fees. We cannot determine this issue with the evidence now on the record and must remand the matter for the referee to make specific findings of fact.

The referee's decision not to award Debroff 20% of the claimant's medical expenses as attorney's fees was based on the referee's unsupported finding that there was no evidence of a fee agreement in the record. We have concluded that there was evidence of a 20% contingent fee agreement on the record, and the question of whether Debroff is entitled to 20% of the medical expenses must be reevaluated in light of that conclusion.

The controlling authority with regard to approval of attorney's fees is the language of Section 442 of the Act, 77 P.S. § 998, which provides:

All counsel fees, agreed upon by claimant and his attorneys, for services performed in matters before any referee or the board, whether or not allowed as part of a judgment, shall be approved by the referee or board as the case may be, providing the counsel fees do not exceed twenty per centum of the amount awarded. The official conducting any hearing, upon cause shown, may allow a reasonable attorney fee exceeding twenty per centum of the amount awarded at the discretion of the hearing official.

Section 442 of the Act implies that the referee must approve an attorney's fee if there is first, an agreement between claimant and attorney and second, the agreement does not exceed 20% of the amount awarded. *Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania v. Dowling*, 22 Pa.Commonwealth Ct. 7, 347 A.2d 318 (1975) concurs, holding that where an attorney's fee had been agreed upon by the client and did not exceed 20% of the workmen's compensation award, the fee must be approved and cannot be reduced by the referee or the Board. In the instant case, the referee erred as a matter of law when he refused to approve the fee agreement between Debroff and claimant. Section 442 of the Act and *Dowling* make clear that a 20% fee agreed to between claimant and Debroff is per se reasonable.

However, the question remains as to whether computation of attorney's fees, with regard to a 20% contingent fee agreement, includes 20% of claimant's medical expenses. We

addressed this question in two recent cases, *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa.Commonwealth Ct. 253, 595 A.2d 697 (1991) and *Raulston v. Workmen's Compensation Appeal Board (Tri-State Motor Transit)*, 146 Pa.Commonwealth Ct. 635, 606 A.2d 668 (1992).

In both *Koszowski* and *Raulston*, this Court determined that while 20% of a claimant's medical expenses could be awarded as attorney's fees, per *Wommer v. Workmen's Compensation Appeal Board (Lycoming County)*, 84 Pa.Commonwealth Ct. 275, 479 A.2d 661 (1984), and *Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania v. General Machine Products Company*, 24 Pa.Commonwealth Ct. 95, 353 A.2d 911 (1976), 20% of the medical expenses should only be awarded as attorney's fees if this amount constitutes a "reasonable" attorney's fee. The Court, in both *Koszowski* and *Raulston*, remanded the matters for the referee to determine the question of whether an attorney's fee of 20% of medical expenses would be reasonable. *Koszowski* also directed the referee to make specific findings on the work performed by claimant's attorney,[7] following which a new order on the question of reasonableness and extent of an attorney's fee should be entered.

In accordance with our decisions in *Koszowski* and *Raulston*, we remand this matter to the Board, with instructions to remand it to the referee to make specific findings on the time and effort expended by Debroff in his representation of claimant and to enter a new order on the question of the reasonableness of the attorney's fee with regard to claimant's medical expenses. The remand proceedings shall be consistent with our ruling in this opinion, reversing the Board, that the referee's Finding of Fact No. 4 is not supported by substantial

7. Although Debroff testified that he spent over 200 hours representing claimant in this case, we may not make a finding of reasonableness of the attorney's fee based on this testimony, because in doing so we would be usurping the referee's role as the fact-finder. The referee did not make any findings of fact regarding the time and effort Debroff spent representing the claimant and, therefore, we must remand the matter to the referee for specific findings on this question.

evidence and that a 20% contingent fee agreement between Debroff and claimant is clearly evidenced in the record.

## ORDER

AND NOW, this 5th day of February, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is reversed insofar as it affirms the referee's finding that evidence of a contingent fee agreement did not exist in the record. This matter is remanded to the Board with instructions to remand it to the referee for proceedings consistent with this opinion.

Jurisdiction relinquished.